JESSICA LYNN WINKLE, Petitioner, *v.* SHERYL FOSTER, WARDEN, JEAN CONSERVATION CAMP; and HOWARD SKOLNIK, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS, Respondents.

No. 56828

July 14, 2011                                   269 P.3d 898

*Law Offices of Freeman & Riggs, L.L.P.*, and *Scott N. Freeman* and *Tammy M. Riggs*, Reno, for Petitioner.

*Catherine Cortez Masto*, Attorney General, *Stephen D. Quinn*, Chief Deputy Attorney General, and *Clark G. Leslie*, Senior Deputy Attorney General, Carson City, for Respondents.

Before the Court En Banc.

# OPINION[1]

By the Court, SAITTA, J.:

Petitioner Jessica Lynn Winkle seeks a writ of mandamus directing respondents Sheryl Foster, Warden of the Jean Conservation

---

[1]We granted the petition for a writ of mandamus in an unpublished order entered May 27, 2011. Petitioner subsequently filed a motion to reissue our decision as a published opinion. NRAP 36(f). Cause appearing, we grant the

Camp, and Howard Skolnik, Director of the Nevada Department of Corrections, to release her to the "305 Program"[2] for alcohol treatment and residential confinement pursuant to NRS 209.425 through NRS 209.429.

In 2009, Winkle pleaded guilty to causing the death of another by driving under the influence of alcohol, in violation of NRS 484.3795 (currently codified as NRS 484C.430). Winkle was sentenced to two to five years in state prison; however, before the expiration of her minimum term, Winkle was released to the 305 Program for alcohol treatment and residential confinement. Several months later, the local paper ran a series of articles reporting that law enforcement and the courts were failing to enforce the DUI laws—in particular, by improperly releasing several felony DUI offenders to residential confinement before completion of their minimum two-year sentences. In response to the articles, Skolnik determined that 8 of the 40 offenders mentioned, including Winkle, were still in residential confinement and had not served the minimum two-year term. As a result, Skolnik directed that Winkle be rearrested and returned to incarceration. Winkle's mandamus petition followed.

In her petition, Winkle seeks a writ of mandamus directing respondents to release her to the 305 Program. We are persuaded that writ relief is warranted for two reasons. First, we conclude that the express language of NRS 209.427 and NRS 209.429 mandates release of qualified offenders to the program for alcohol treatment and residential confinement. Second, we conclude that, unlike in *State v. District Court (Jackson)*, 121 Nev. 413, 116 P.3d 834 (2005), the express language of NRS 209.429(4)(a) deems an assignment to the program as "imprisonment" for purposes of NRS 484C.430 and "not a release on parole." We therefore grant the petition for a writ of mandamus. As the parties are familiar with the facts, we do not recount them further except as necessary to our disposition.

### DISCUSSION

*Propriety of writ relief*

A writ of mandamus is an extraordinary remedy, and therefore, the decision to entertain the petition lies within our discretion. *Cheung v. Dist. Ct.*, 121 Nev. 867, 869, 124 P.3d 550, 552

---

motion. Accordingly, we issue this opinion in place of our prior unpublished order.

[2]The 305 Program is named after Assembly Bill 305, which established a post-sentence treatment program for the purpose of rehabilitating and treating certain DUI offenders with substance abuse problems. 66th Leg. (Nev. 1991). The 305 Program is currently codified in NRS 209.425 through NRS 209.429.

(2005). Such a writ is available only "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." NRS 34.160. A writ of mandamus will not issue if petitioner has "a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. The petitioner bears "the burden of demonstrating that extraordinary [writ] relief is warranted." *Pan v. Dist. Ct.*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004).

Winkle seeks a writ of mandamus directing respondents to release her to the 305 Program for alcohol treatment and residential confinement. She petitions for such relief based on certain duties arising under NRS 209.425 through NRS 209.429. She therefore seeks to compel the performance of an act that the law requires as a duty resulting from an office, something for which a writ may be issued. *See* NRS 34.160. Neither Skolnik's decision to return Winkle to incarceration nor his refusal to release her again to residential confinement for purpose of the 305 Program is appealable; as such, Winkle does not have a plain, speedy, and adequate remedy in the ordinary course of law. *See* NRAP 3A(b); *Pan*, 120 Nev. at 223, 88 P.3d at 841 ("[A]n appeal is generally an adequate legal remedy that precludes writ relief."). As a result, Winkle's writ petition warrants our consideration.

*Winkle must be released to the 305 Program for alcohol treatment and residential confinement*

Winkle argues that Skolnik is under a duty as a matter of law, pursuant to NRS 209.425 through NRS 209.429, to release her to the 305 Program for alcohol treatment and residential confinement. She asserts that the statutes provide for a mandatory release to the program. We agree.

Statutory interpretation is a question of law subject to de novo review. *Butler v. State*, 120 Nev. 879, 892, 102 P.3d 71, 81 (2004). When interpreting a statute, we look to its language, *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004), giving effect to its terms, and avoid an interpretation that renders its language meaningless or superfluous. *Butler*, 120 Nev. at 892-93, 102 P.3d at 81. If the statute's language is clear and unambiguous, the statute is enforced as written. *Sheriff v. Witzenburg*, 122 Nev. 1056, 1061, 145 P.3d 1002, 1005 (2006). Only when the statute is ambiguous, meaning that it is subject to more than one reasonable interpretation, do we "look beyond the language [of the statute] to consider its meaning in light of its spirit, subject matter, and public policy." *Butler*, 120 Nev. at 893, 102 P.3d at 81.

The criminal penalty for conviction of DUI causing death or substantial bodily harm is a minimum term of "imprisonment in the state prison" for two years. NRS 484C.430(1). The legislatively created post-sentence treatment program is available for such offenders for the purpose of rehabilitating "abuser[s] of alcohol or drugs." NRS 209.425(1). Assignment to the alcohol treatment program begins with an evaluation. NRS 209.427(1). If the evaluation indicates that the "offender is an abuser of alcohol or drugs and that the offender can be treated successfully . . . , the Director shall . . . assign the offender to the program." *Id.* The assignment "must be, to the extent that the period reasonably can be predicted, for the year, or as much thereof as practicable, immediately preceding the date the offender is due to be released from prison, either on parole or at the expiration of the offender's term." *Id.* The program "include[s] an initial period of intensive mental and physical rehabilitation in a facility" of the Department of Corrections. NRS 209.425(1). If the offender then meets certain requirements, "the Director shall assign" him or her "to serve a term of residential confinement." NRS 209.429(1). The assignment is deemed "[a] continuation of the offender's imprisonment and not a release on parole," and for classification purposes is further deemed to be "an assignment to a facility of the Department [of Corrections]." NRS 209.429(4)(a)-(b).

The State's argument, if credited, creates a conflict between NRS 484C.430(1) and NRS 209.427(1) in that, on the one hand, the Legislature requires a minimum term of imprisonment in the state prison of two years for those convicted of a third DUI offense or of DUI causing death or substantial bodily injury, while, on the other hand, it has simultaneously mandated that qualified offenders be assigned to the program for alcohol treatment and residential confinement one year before "the offender is due to be released from prison." NRS 209.427(1).

It is nonetheless evident, given the express language of NRS 209.427(1), that the Legislature chose to qualify the mandatory sentencing scheme of NRS 484C.430(1) when it created the 305 Program and mandated that qualified offenders be assigned to the program prior to the expiration of their minimum term for the purpose of rehabilitation; we are bound to enforce its mandate.

NRS 209.427(1) states that the Director of the Department of Corrections "shall" assign an offender to the alcohol treatment program and that "[s]uch an assignment must be . . . for the year . . . immediately preceding the date the offender is due to be released from prison." NRS 209.427(1). Also, NRS 209.429(1) indicates that the Director "shall assign an offender to the custody of the Division of Parole and Probation of the Department of Public Safety to serve a term of residential confinement." Even though

NRS 209.429(1) is silent as to the timing of such assignment, when NRS 209.429 is read together with NRS 209.427, the only construction that gives meaning to the timing of an assignment to residential confinement is to read NRS 209.429 as requiring the Director to assign an offender to residential confinement one year before "the offender is due to be released from prison." NRS 209.427(1). *See, e.g., Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 418, 422, 132 P.3d 1022, 1028, 1030-31 (2006) (if possible, "this court will interpret a rule or statute in harmony with other rules and statutes," especially where one provision is silent on specifics included in another (internal quotations omitted)). A contrary reading puts NRS 209.429 in conflict with NRS 209.427, in that an offender could be assigned to residential confinement before that offender is eligible for the alcohol treatment program; clearly, such a construction would frustrate the purpose of these statutes and render an absurd result. *See, e.g., Southern Nev. Homebuilders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (provisions within a common statutory scheme must be read "with one another in accordance with the general purpose of those statutes" and must not produce an unreasonable or absurd result (internal quotations omitted)).

Moreover, both NRS 484C.430(1) and NRS 209.429(4)(a) use the same term: "imprisonment." The former mandates a minimum term of "imprisonment" in the state prison for two years, while the latter states that assignment to the 305 Program shall be deemed "imprisonment and *not a release on parole*." NRS 484C.430(1); NRS 209.429(4)(a) (emphasis added). Citing *Jackson*, the State argues that, as a matter of policy, participation in the 305 Program cannot be deemed imprisonment for purposes of satisfying the minimum term of imprisonment specified in NRS 484C.430(1). The statute at issue in *Jackson*, however, did not equate pretrial confinement with imprisonment as NRS 209.429(4)(a) expressly does. We cannot extend *Jackson* to the 305 Program because, unlike the statute at issue in *Jackson*, NRS 209.429(4)(a) and (b) specifically state that assignment to the 305 Program is "[a] continuation of the offender's imprisonment and not a release on parole," and for classification purposes is "an assignment to a facility of the Department [of Corrections]." It may be that, as a matter of policy, participation in the 305 Program should not count against the minimum term of imprisonment specified in NRS 484C.430(1); however, given the Legislature's decision to equate participation in the 305 Program with imprisonment, we are not at liberty to revise the plain wording of the statutes.

In sum, we conclude that the express language of NRS 209.427 and NRS 209.429 requires the Director to assign an eligible of-

fender to the 305 Program for alcohol treatment and residential confinement one year prior to parole eligibility. We further conclude that NRS 209.429 deems an assignment to the program as "imprisonment" for purposes of NRS 484C.430 and "not a release on parole." Because Winkle is within one year of parole eligibility and is otherwise eligible for the program, Skolnik must release her to the 305 Program. *See* NRS 34.160.

We therefore grant the petition and direct the clerk of this court to issue a writ of mandamus instructing respondents to release Winkle to the 305 Program for alcohol treatment and residential confinement.[3]

DOUGLAS, C.J., and CHERRY, GIBBONS, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.

---

[3]Given our resolution, we need not reach Winkle's remaining contentions.